IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LARRY E. FORDHAM, JR.,
        Petitioner,

v.                                        Case No.  3:04cv248/MCR/MD

JAMES V. CROSBY, JR.,
        Respondent.

_____

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent has filed a motion to dismiss the petition as untimely (docs. 8 & 9)[1], to which petitioner has responded (doc. 19).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration, it is the opinion of the undersigned that the pleadings and attachments before the court show that the petition should be dismissed.


## BACKGROUND AND PROCEDURAL HISTORY

On September 18, 1991 petitioner was convicted upon jury verdict of first-degree felony murder (Count I), armed robbery (Count II) and grand theft (Count III) in the Circuit Court of Escambia County, Florida, case number 91-606 (ex. C).  He was sentenced to concurrent terms of life imprisonment without the possibility of parole for 25 years on Count I, 75 years imprisonment on Count II and 5 years imprisonment on Count III (*id.*).  The Florida First District Court of Appeal ("First DCA") affirmed petitioner's convictions and sentences without written opinion on

_____

[1]Respondent filed a motion to dismiss with attachments (doc. 8), which was incorrectly posted as a "response."  The clerk corrected the docket to reflect that the response was in fact a "motion," (doc. 9).  All references to exhibits will be to those attached to doc. 8, unless otherwise noted.

June 2, 1993. *Fordham v. State*, 619 So.2d 955 (Fla. 1st Dist. Ct. App. 1993) (Table) (copy at ex. H).

## PROCEDURAL HISTORY

On June 15, 1995 petitioner filed a motion for post-conviction relief, pursuant to FLA.R.CRIM.P. 3.850, asserting nine grounds (ex. J).[2]  On February 12, 1996 the trial court issued an order granting relief on Ground 7 and vacating petitioner's conviction of grand theft (ex. K).  The trial court denied relief on the remaining grounds without holding an evidentiary hearing (*id.*).  On appeal, the First DCA affirmed the trial court's disposition of all claims except one--petitioner's ineffective assistance of counsel claim based on counsel's failure to move to suppress petitioner's confession. *Fordham v. State*, 691 So.2d 43 (Fla. 1st Dist. Ct. App. 1997)

---

[2]Petitioner claimed the following:

1.   Trial counsel rendered ineffective assistance of counsel when he failed to move to suppress petitioner' confession.

2.  Petitioner's confession was coerced and involuntarily made, and therefore he is entitled to a new trial.

3.  Petitioner's confession was obtained in violation of his right to counsel, and therefore he is entitled to a new trial.

4.  Trial counsel rendered ineffective assistance when he failed to depose the state's key witness against petitioner (co-defendant Clifford Barth).

5.   Trial counsel was ineffective when he failed to object to the state's bad faith death-qualification of petitioner's jury

6.  Petitioners' convictions for both armed robbery and felony murder violate his Federal and State constitutional rights against double jeopardy.

7.  Petitioner's convictions for robbery and grand theft based on a single taking of money violate his Federal and State constitutional right against double jeopardy.

8.  Trial counsel was ineffective when he failed to call two exculpatory witnesses for the defense (Jennifer (Tatum) Morris and Sergeant Martin).

9.  Petitioner is entitled to a new trial because the state failed to disclose evidence in its possession which was exculpatory to petitioner (co-defendant James Patrick Bonifay's exculpatory statements to Jennifer (Tatum) Morris and Sergeant Martin).

(Ex. J, pp. 2-3).

(copy at ex. S).  The appellate court remanded that claim with directions to conduct an evidentiary hearing.  (*Id.*).  Following an evidentiary hearing, the lower court issued an order again denying relief on that claim (ex. U).  The First DCA affirmed without written opinion on July 7, 2000.  *Fordham v. State*, 767 So.2d 1206 (Fla. 1st Dist. Ct. App. 2000) (Table) (copy at ex. Z).  The mandate issued September 6, 2000 (ex. AA).

On November 7, 2002 petitioner filed a second motion for post-conviction relief pursuant to Fla.R.Crim.P. 3.850 based on allegations of newly discovered evidence (ex. BB).  According to petitioner, the newly discovered evidence was "Codefendant James Patrick Bonifay's willingness to publicly disavow defendant Fordham's participation in the entire criminal episode" (*id.*, p. 2).  In support of his claim, petitioner attached the affidavit of Escambia County Sheriff's Office Detention Deputy Lawrence T. Vieitez dated December 5, 2001.  The affidavit provides, in pertinent part, as follows:

> On or about the week of November 14, 2001 inmate [James] Patrick Bonifay was transferred from Union Correctional Institution to our facility at the Escambia County Jail to appear in Court.  I [Deputy Vieitez] had an opportunity to speak with inmate Bonifay while he was in our facility at the county jail.  He had asked me about the kids in the green jump suites [sic] who were on a tour of the jail.  I responded to him saying that thanks to your buddy inmate Fordham, that he started this tour and youth awareness program.  We spoke in depth of the program and how it works, and inmate Bonifay had asked how Fordham was doing.  I explained to him that he was doing fine and inmate Bonifay on his own accord, told me that in no way did Larry Fordham, Jr. have knowledge of why we pulled up to the Trout Auto Part Store the night Mr. Coker was killed and the store was robbed.  He stated to me that Fordham did not have knowledge of the robbery or murder that took place at the Trout Auto Part Store that night.  He also stated to me that Fordham was just a little spoiled rich boy and that is why I used him.  I asked Bonifay if he had ever told anyone else this and he answer [sic] me with the answer no, that he had never told anyone else.  I then asked Bonifay if he would be willing to speak with Larry Fordham, Sr. [petitioner's father] and he replied yes, but he was to be here for a short time for re-modification and would be leaving in a few days going back to prison.

(Ex. BB, Vieitez Aff., p. 1).  The Rule 3.850 court denied relief (ex. CC).  The First DCA affirmed without written opinion on May 27, 2004, *Fordham v. State*, 875 So.2d 1242 (Fla. 1st Dis. Ct. App. 2004) (Table) (copy at ex. HH), with the mandate issuing June 30, 2004 (ex. II).

Petitioner filed the instant federal habeas petition on July 13, 2004 (doc. 1). He challenges his conviction on the grounds that his Fifth, Sixth and Fourteenth Amendment rights were violated when the state court denied relief on his claim of newly discovered evidence.  Specifically, petitioner presents four grounds for relief which are summarized as follows:

1.  The state court's decision was based on an unreasonable determination of the facts and constitutes an unreasonable application of the law because petitioner presented clear and convincing evidence that Bonifay's exculpatory statements were not known at the time of petitioner's trial (doc. 1, Attach. at 5-8).

2.  The state court unreasonably applied Florida law (*i.e.*, the test enunciated in *Jones v. State*, 591 So.2d 911 (Fla. 1991)) when it determined that the proffered newly discovered evidence was not of such nature that it would probably produce an acquittal on retrial (*id.* at 9-13).

3.  The state court's finding that Bonifay's exculpatory statements would be merely cumulative was objectively unreasonable because the state court failed to apply the balancing test under Fla. Stat. § 90.403 (*id.*, at 13-18).

4.  Petitioner's Fifth, Sixth and Fourteenth Amendment rights were violated when the First DCA, after affirming the Rule 3.850 court's denial order, denied petitioner's motion for a written opinion without allowing petitioner to file an amended motion after obtaining the assistance of counsel (*id.*, at 18-20).

## DISCUSSION

Respondent argues that the instant petition is barred by the statute of limitations.  Because petitioner filed this § 2254 petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA governs the present petition.  *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).  Pursuant to 28 U.S.C. § 2244, a one-year period of limitation applies to the filing of a federal habeas corpus petition by a person in

custody pursuant to a state court judgment.  The limitation period runs from the latest of:

> **(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;**
>
> **(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;**
>
> **(c)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or**
>
> **(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.**

**§ 2244(d)(1).  In the context of subsection (A) above, a "fifth option" supplied uniformly by the Courts of Appeals gives prisoners whose convictions became final prior to the AEDPA a one-year grace period running from the new statute's effective date.  *Johnson v. United States*, No. 03-9685, 2005 WL 742305, at \*4 (U.S. Apr. 4, 2005) (citing *Duncan v. Walker*, 533 U.S. 167, 183 n. 1, 121 S.Ct. 2120, 2130 n. 1, 150 L.Ed.2d 251 (2001) (Stevens, J., concurring in part and concurring in the judgment) (collecting cases)); *Wilcox v. Florida Dep't. of Corrections*, 158 F.3d 1209, 1211 (11ᵗʰ Cir. 1998).  According to the tolling provision of § 2244(d), the time during which a "properly filed" application for state post-conviction or other collateral review is pending shall not be counted toward any period of limitation.  28 U.S.C. § 2244(d)(2).**

**In the instant case, there appears to be no dispute that if the petition were governed by the statutory provision set forth in subsection (A), it would be untimely.  The First DCA affirmed petitioner's conviction on June 2, 1993.  Petitioner did not seek review of his conviction in the Florida Supreme Court or in the United States Supreme Court.  Accordingly, his judgment of conviction became "final" for purposes of § 2244 on September 1, 1993, when the ninety-day period in which to**

seek *certiorari* from the United States Supreme Court expired.[3]  *See* 28 U.S.C. §
2244(d)(1); *Bond v. Moore*, 309 F.3d 770, 774 (11ᵗʰ Cir. 2002) (for purposes of §
2244(d)(1)(A), the one-year limitation period began to run when the time expired for
filing a petition for *certiorari* with the United States Supreme Court); *Jackson v.
Secretary for the Dep't of Corrections*, 292 F.3d 1347, 1349 (11ᵗʰ Cir. 2002); *accord
Kaufman v. United States*, 282 F.3d 1336, (11ᵗʰ Cir. 2002) (applying same rule to
motion filed under 28 U.S.C. § 2255).  However, because that date precedes the
effective date of the 1996 amendments to § 2244, under the "fifth option" petitioner's
one year limitation period under section 2244(d)(1)(A) would begin on April 24, 1996,
the effective date, and continue through April 24, 1997 unless there were pending
during that time any properly filed state post-conviction applications or motions for
"other collateral review."  *Helton v. Secretary for the Dep't of Corrections*, 259 F.3d
1310, 1312 (11ᵗʰ Cir. 2001) (citing *Wilcox, supra*, at 1211).

  The record reveals that on April 24, 1996, petitioner's first Rule 3.850 motion
was pending.  That motion remained pending until September 6, 2000, the date the
mandate issued from petitioner's Rule 3.850 appeal.[4]  Petitioner had one year, until
September 6, 2001, to file his federal habeas petition unless there were pending
during that time any properly filed state post-conviction applications or motions for
"other collateral review."  The record reveals that on September 6, 2000 petitioner
had no applications for state post-conviction review pending, nor did he file any
such applications during the year that followed.  Petitioner did not file his federal
habeas petition until several years later on July 13, 2004.  Petitioner's second motion
for post-conviction relief filed after expiration of the limitations period would not
entitle him to the tolling benefit of § 2244(d)(2) even though the second motion was
considered by the state court on its merits.  *See Webster v. Moore*, 199 F.3d 1256,

---

   [3]The 90-day period for filing in the United States Supreme Court a petition for a *writ of
certiorari* seeking review of a decision of a state appellate court runs from the date of the state court's
opinion, not the date of issuance of the mandate.  *See* Sᴜᴘ. Cᴛ. R. 13.3.

   [4]*See Nyland v. Moore*, 216 F.3d 1264 (11ᵗʰ Cir. 2000) (recognizing that a "properly filed" state
post-conviction petition is "pending" under Florida procedure -- and consequently tolls the limitations
period -- until the appellate court's issuance of the mandate on appeal).

1269 (11th Cir.), *cert. denied*, 531 U.S. 991, 121 S.Ct. 481, 148 L.Ed.2d 454 (2000) ("A state-court petition . . . that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled.").  Nor would the later filing reinitiate the federal limitations period.  *See Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001).

Petitioner contends that the statutory provision set forth in subsection (D) governs the commencement of the limitations period (doc. 19).  Respondent argues that even if governed by subsection (D), the petition is still time-barred (doc. 8, pp. 7-14).  Respondent is correct.

An analysis under § 2244(d)(1)(D) requires the court to determine the date on which the factual predicate of petitioner's claims could have been discovered through the exercise of due diligence.  The claims raised in the instant petition are based on petitioner's newly discovered evidence claim adjudicated by the state court in petitioner's second Rule 3.850 motion.  Petitioner contends that the "factual predicate" of his claims is co-defendant James Patrick Bonifay's "willingness to come forward and publicly disavow [petitioner's] participation in the armed robbery and felony-murder" (doc. 19, p. 2).  Petitioner alleges that these facts first came to light on December 5, 2001 when Deputy Vieitez informed petitioner's father of Bonifay's statements.  Deputy Vieitez attested to the statements in an affidavit executed on December 6, 2001.  Petitioner received a copy of the affidavit on December 12, 2001 when his parents mailed it to him in a birthday card.  According to petitioner, the statute of limitations did not begin to run until the factual predicate of his claim--Bonifay's statements as conveyed in Deputy Vieitez' affidavit--actually became known to him on December 12, 2001 (doc. 19, pp. 2-3).

Respondent first emphasizes that the question under subsection (D) is not when the prisoner first discovers the new evidence, but when he could have learned of the evidence through the exercise of due diligence.  *See* 28 U.S.C. § 2244(d)(1)(D); *see also, e.g., Schlueter v. Varner*, 384 F.3d 69 (3rd Cir. 2004) (Habeas petitioner could have discovered factual predicate for conflict-of-interest claim involving trial counsel through exercise of due diligence prior to effective date of Antiterrorism and Effective Death Penalty Act (AEDPA), not on later date when petitioner actually

discovered that defense co-counsel allegedly shared civil practice with prosecutor; it was inconceivable that attorneys could have hidden their office sharing arrangement from small legal community or public, and petitioner's current attorneys learned of arrangement simply by interviewing co-trial counsel, a step which could have been accomplished years earlier); *Slutzker v. Johnson*, 393 F.3d 373, 382 n. 9 (3rd Cir. 2004) ("[T]he statute of limitations starts running from the date on which the factual predicate of the claim or claims presented <u>could have been discovered</u> through the exercise of due diligence, not the date on which the factual predicate actually was discovered.") (citations and internal quotation marks omitted); *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) (Under § 2244(d)(1)(D), "the time commences when the factual predicate could have been discovered through the exercise of due diligence, not when it was actually discovered by a given prisoner.") (internal quotation marks omitted).

Respondent maintains that the facts underlying the Vieitez affidavit--petitioner's alleged lack of foreknowledge of the crimes--were actually known to petitioner at the time of his 1991 trial. At trial, petitioner testified that during his participation in the events surrounding the murder of the victim, petitioner was unaware that robbery and murder were to take place (ex. B, pp. 64, 92-93, ex. CC). Alternatively, respondent argues that even if the court deems the factual predicate of petitioner's claim to be Mr. Bonifay's assertion to police that petitioner did not intentionally participate in the robbery and murder, that fact could have been, and was, discovered in 1994. On January 20, 1994 petitioner's attorney obtained a sworn statement from petitioner's co-defendant Robin Archer. In that statement, Archer asserted that Bonifay told him petitioner did not have prior knowledge that he was going to commit the robbery and murder, and that all petitioner did was drive Mr. Bonifay around (ex. J, pp. 483, 484-89). According to Archer, Bonifay told him that he used petitioner as his "chauffeur," "gopher," or "taxi driver" (*id.*, pp. 488-90). Present during the Archer interview was petitioner's father (*id.*, pp. 484-85). Petitioner's attorney also obtained the November 28, 1994 sworn statement of Escambia County Sheriff's Office Sergeant Thomas Alan Martin. In that statement,

Sgt. Martin recounted that Mr. Bonifay told him with respect to petitioner that "they [petitioner and/or another co-defendant] didn't know what was going on" (ex. J, p. 536). Petitioner's father was present during Sgt. Martin's statement as well (*id.*, p. 533). Petitioner attached the transcript of the Martin statement to his first Rule 3.850 motion which was filed on June 15, 1995. He attached the transcript of the Archer statement in an addendum filed on October 30, 1995 (*id.*, p. 483).[5]

The court finds that <u>at the very latest</u>, petitioner knew of the factual predicate of his claim in 1995. By the time petitioner filed his first Rule 3.850 motion, he knew enough facts to tell the state court (1) that he had no prior knowledge of his co-defendants' plan to commit robbery or murder and (2) that co-defendant Bonifay corroborated this fact to others (or, to use petitioner's terms, that Bonifay had disavowed petitioner's participation in the crimes). The fact that petitioner later developed additional evidentiary support for his claim does not alter this conclusion. *Cf. Flanagan v. Johnson*, 154 F.3d 196, 198-99 (5th Cir. 1998).[6]

---

[5] Petitioner additionally asserted in his first Rule 3.850 motion that shortly after the crimes were committed, Bonifay stated to one Ms. Jennifer (Tatum) Morris that petitioner did not know that his co-defendants were planning to rob the auto parts store or shoot the clerk (ex. J, pp. 31-32). Petitioner stated he became aware of Bonifay's statement to Ms. (Tatum) Morris on June 22, 1993 when she revealed it to petitioner's father (*id.*, p. 34).

[6] In *Flanagan*, the petitioner claimed that his trial counsel had been constitutionally ineffective for failing to inform him that he did not have to testify at his 1989 trial. The petitioner neglected to file his federal habeas petition within AEDPA's one-year statute of limitations. However, he argued that he was unaware of the "factual predicate" of his claim until November of 1996, when his habeas counsel obtained an affidavit from his trial counsel, in which counsel stated that he did not remember whether he had discussed with the petitioner the concept that the petitioner could refuse to testify.

In rejecting the petitioner's argument, the Fifth Circuit concluded that he was aware of the factual predicate of his claim--"the fact that he was called to testify and did not know he had the right to refuse"--long before he had obtained trial counsel's affidavit. *Id.* at 199. By focusing on the affidavit, rather than on his knowledge of the facts underlying his claim, the petitioner was "confusing his knowledge of the factual predicate of his claim with the time permitted for gathering evidence in support of that claim. Trial counsel's affidavit neither change[d] the character of [the] claim nor provide[d] any new ground for [the] petition." *Id.*

As in *Flanagan*, petitioner's argument in this case conflates his knowledge of the "factual predicate" of a claim with the development of sufficient evidentiary support to prove the claim.

The court need not decide whether petitioner discovered the factual predicate of his claim at the time of his trial in 1991, at the time of the Archer and Martin statements in 1994, or at the time he filed his first Rule 3.850 motion in 1995, because even assuming petitioner did not discover it until the latest of those dates his federal habeas petition would be considered untimely.  Under § 2244(d)(1), the court is required to use as the commencement date of the statute of limitations the latest of the dates provided in that section.  Because all of the foregoing dates precede the date petitioner's conviction became final under § 2244(d)(1)(A), the calculation of the limitations period is governed by the court's previous analysis using § 2244(d)(1)(A) as the triggering date.  As determined by that analysis, the statute of limitations expired on September 6, 2001.

It is noted that "[s]ection 2244 . . . permits equitable tolling 'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'"  *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) (citing *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999)).  Petitioner contends equitable tolling applies to his case because due to the extraordinary circumstance of his being incarcerated, he did not receive a copy of Deputy Vieitez' affidavit until seven days after it was executed.  He contends that if the court equitably tolls that seven day period, his petition would be considered timely.  This argument is without merit, as the court has found that the factual predicate of petitioner's claims is Bonifay's assertions of petitioner's innocence, assertions which were made years prior to the Vieitez affidavit.

Petitioner alternatively contends the court should equitably toll five days from July 2, 2004 until July 6, 2004 because the prison received the First DCA's mandate on petitioner's appeal of the denial of his second Rule 3.850 motion on July 2, 2004, but did not deliver it to petitioner until July 6 2004.  This argument is also without merit, because this court has found that petitioner's second Rule 3.850 motion had no effect on the statute of limitations calculation because it was filed after the limitations period expired.  Petitioner has offered no explanation why between

September 6, 2000 and September 6, 2001, he failed to file a federal habeas corpus petition which would have allowed him to obtain federal review of the claims he raised on direct appeal and in his first Rule 3.850 motion. Two of the claims raised in petitioner's first Rule 3.850 motion related to Bonifay's earlier assertions of petitioner's innocence to others. Based on the foregoing, petitioner's assertions are insufficient to justify application of the equitable tolling doctrine.

Lastly, petitioner asserts that this court's refusal to consider his petition will result in a fundamental miscarriage of justice because he can present a credible claim of actual innocence. In his reply, petitioner argues that "Bonifay's willingness to publicly disavow Fordham's participation in the robbery/murder is the new reliable evidence that *Schlup* [*v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)] requires." (Doc 19, p. 17). He maintains that his claim of actual innocence is a credible one "because of all the exculpatory facts and information that have been discovered <u>after</u> his trial." (*Id.* at 26) (emphasis in original). Petitioner outlines this post-trial information in his reply (*id.* at 17-26).

In essence, petitioner attempts to reframe his substantive claim of actual innocence based upon newly discovered evidence as a procedural gateway to address the claims raised in his petition. However, the fundamental miscarriage of justice exception applies only where the petitioner "<u>supplements</u> his constitutional claim with a colorable showing of factual innocence," not in a case where the petitioner makes a freestanding claim of actual innocence. *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986) (plurality opinion) (emphasis added). In the instant case, the petition does not allege an independent claim of constitutional error occurring <u>at trial</u>. *See Schlup*, 513 U.S. at 313-14, 115 S.Ct. at 860-61 (explaining the difference between a procedural claim of actual innocence and a substantive claim of actual innocence, noting that a procedural claim of actual innocence "depends critically" on the validity of the petition's underlying claims of constitutional error arising at trial which purportedly denied the

petitioner "the full panoply of protections afforded to criminal defendants by the Constitution").

Finally, even if this court found that the petition was not time-barred or that petitioner made a colorable claim of actual innocence to permit review of his time-barred claims, petitioner would not be entitled to federal habeas relief.  Three of petitioner's four claims are variations of a freestanding claim of actual innocence based upon newly discovered evidence (Bonifay's assertions of petitioner's innocence).  Claims based upon newly discovered evidence which bear only upon the guilt or innocence of the petitioner do not justify habeas corpus relief.  As the Supreme Court explained in *Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993):

> A person when first charged with a crime is entitled to a presumption of innocence, and may insist that his guilt be established beyond a reasonable doubt.  Other constitutional provisions also have the effect of ensuring against the risk of convicting an innocent person. . . . All of these constitutional safeguards, of course, make it more difficult for the State to rebut and finally overturn the presumption of innocence which attaches to every criminal defendant.  But we have also observed that "[d]ue process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person."  *Patterson v. New York*, 432 U.S. 197, 208, 97 S.Ct. 2319, 2326, 53 L.Ed.2d 281 (1977).  To conclude otherwise would all but paralyze our system for enforcement of the criminal law.
>
> Once a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears.
>
> . . . .
>
> Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceedings. . . . This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution -- not to correct errors of fact.
>
> . . . .

> Few rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence.

506 U.S. at 400, 113 S.Ct. at 860 (citations omitted).  Relying on *Herrera*, the Eleventh Circuit recently held that even if a petitioner presents a credible claim of actual innocence, such a claim does not entitle him to federal habeas relief. *Brownlee v. Haley*, 306 F.3d 1043 (11th Cir. 2002).  In *Brownlee*, a state prisoner sought habeas relief under § 2254 based in part on a claim of newly discovered evidence--the key prosecution witness' recantation of his trial testimony.   In denying relief, the Eleventh Circuit explained:

> It is not our role to make an independent determination of a petitioner's guilt or innocence based on evidence that has emerged since the trial. . . . Brownlee alleges no independent constitutional violation relating to [the key witness'] recantation, and he is therefore entitled to no federal habeas relief on this claim.

*Id.* at 1065.  Similarly, in the instant case the petition alleges no independent constitutional violation relating to Bonifay's alleged disavowment of petitioner's involvement in the crimes.  Thus, the first three claims raised in the petition do not warrant federal habeas relief.

Likewise, the fourth and final issue raised in the petition--that petitioner was denied due process during the appeal in his second post-conviction relief proceeding--does not state a basis for federal habeas relief.  It is well established in the Eleventh Circuit that a § 2254 court is not an appropriate forum for a prisoner who wishes to challenge the process afforded him in state post-conviction proceedings.  This is so, because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself.  *Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir. 2004) (affirming district court's denial of habeas relief based on state court judge's refusal to recuse himself from the Rule 3.850 hearing, explaining "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); *Spradley v. Dugger*, 825 F.2d

1566, 1568 (11th Cir. 1987) (per curiam) (concluding § 2254 claim that petitioner's due process rights were violated when state post-conviction court held no evidentiary hearing and failed to attach appropriate portions of record to its opinion "goes to issues unrelated to the cause of petitioner's detention [and] does not state a basis for habeas relief").[7]

## CONCLUSION

The instant petition for writ of habeas corpus is untimely.  The record does not support the application of the equitable tolling doctrine or any other exception to the limitations period.  Thus, it should be dismissed.  Alternatively, the petition should be dismissed because petitioner is entitled to no federal habeas relief on any of his claims.

**Accordingly, it is respectfully RECOMMENDED:**

---

[7]Other circuits agree.  *See, e.g., Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir.)(denying certificate of appealability on petitioner's claim that he was denied due process when state post-conviction court adopted state's proposed findings and conclusions three hours after they were filed with court, noting that a claim alleging errors in a state post-conviction proceeding does not entitle a petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself), *cert. denied*, 527 U.S. 1056, 120 S.Ct. 22, 144 L.Ed.2d 825 (1999); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997) (noting established law that "errors concerning [the state post-conviction] process are not cognizable in federal habeas proceedings"), *cert. denied*, 525 U.S. 903, 119 S.Ct. 237, 142 L.Ed.2d 195 (1998); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) ("An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction , as it is an attack on a proceeding collateral to the detention and not the detention itself.") (internal quotes omitted); *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir.1993) (holding that petitioner's challenge to state "post-conviction procedures on their face and as applied to him would fail to state a federal constitutional claim cognizable in a federal habeas proceeding"); *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) (agreeing with the majority view and holding that "a petition alleging errors in the state post-conviction review process is not addressable through habeas corpus proceedings:); *Bryant v. Maryland*, 848 F.2d 492, 492 (4th Cir.1988) (following courts that have determined "claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief"); *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir.1986) (holding that §2254 was not available to challenge "a denial of the sixth amendment right to effective assistance of counsel, a denial of due process, and a denial of equal protection in the State post-conviction proceedings--claims unrelated to his detention").

That the petition for writ of habeas corpus, (doc. 1) challenging the conviction and sentence in *State of Florida v. Larry E. Fordham, Jr.*, in the Circuit Court of Escambia County, Florida, case no. 91-606, be DISMISSED with prejudice and the clerk be directed to close the file.

At Pensacola, Florida this 11th day of April, 2005.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. A copy of any objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**